UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JOEL MESIAS,

                Plaintiff,

             - against -

JOHN DOE (SSI Representative), SOCIAL SECURITY
ADMINISTRATION,

                Defendant.
--------------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

**MEMORANDUM & ORDER**
11-CV-2373 (RRM)

Plaintiff *pro se* Joel Mesias ("plaintiff") brings this action against a representative of the

Social Security Administration ("defendant" or "SSA"), pursuant to 42 U.S.C. § 405(g), seeking

review of defendant's determination that plaintiff was not without fault in accepting an alleged

overpayment of Supplemental Security Income ("SSI") benefits, and that plaintiff was therefore

not entitled to a waiver.  On June 29, 2012, defendant filed a motion for judgment on the

pleadings.  For the reasons set forth below, defendant's motion is GRANTED.

## BACKGROUND

Plaintiff filed an application for SSI benefits on July 21, 1993, and, being found eligible

due to schizophrenia, paranoia, and other psychotic disorders, began receiving benefits.

(Administrative Record ("Admin. R.") (Doc. No. 18) at 12, 113.)[1]  During 1999, plaintiff began

working.  (*Id.* at 12, 134, 172.)  Plaintiff had reported earnings of $2,935.55 in 1999 and

$21,021.97 in 2000.  (*Id.* at 14, 118.)  However, he continued to receive SSI benefits from SSA

through October 2000.  (*Id.* at 14.)  SSA sent plaintiff notices on November 28, 2000 and July

30, 2002 assessing an overpayment in the amount of $4,666.42.  (*Id.* at 54, 57, 117.)

---

[1] Unless otherwise indicated, Administrative Record page citations refer to the printed page numbers in the top right
corner of the record itself, not the Electronic Filing page number stamp added to the filed document.

On April 24, 2003, plaintiff requested a waiver of the overpayment.  (*Id.* at 29.)  In his request, plaintiff indicated "Yes" to the prompt "Did you tell us about the change or event that made you overpaid?"  (*Id.* at 30.)  However, in response to the next prompt "If yes, how, when and where did you tell us?," plaintiff answered that he wrote a letter to SSA and visited an SSA office, where he made a request for a waiver and explained that he was using the benefits for travel expenses and to pay off debt.  (*Id.*)  He also stated: "If anything at all should be returned, I think that in my opinion half or maybe a third of what you are asking for because of your own clerical error might be a more reasonable amount to work with."  (*Id.* at 31.)  In the request for a waiver, plaintiff did not state that he told SSA, either in the alleged letter or during his alleged visit to an office, that he had begun working again.  On November 4, 2003, SSA informed plaintiff that his waiver request was not approved.  (*Id.* at 37.)  A personal conference was scheduled for November 26, 2003.[2]  (*Id.* at 37.)  On the same day, SSA determined that, because plaintiff had not timely notified SSA of his earnings, he was not without fault in causing the overpayment, and his request for a waiver was denied.  (*Id.* at 39.)  Plaintiff requested reconsideration of this decision, (*id.* at 43), and SSA again denied his request, (*id.* at 44).

On June 28, 2006, Administrative Law Judge ("ALJ") David Z. Nisnewitz conducted a hearing in the case.  (*Id.* at 128.)  Plaintiff testified that in 1997, he "came to the [SSA] office to try to get some help.  They said that they would increase my SSI and promised me a refund and promised to help me find work . . . ."  (*Id.* at 133.)  He then testified that he began working part-time for a retail data services company in September 1999.  (*Id.* at 133, 138.)  When asked whether he notified them that he went back to work, he replied, "Well, they had promised me a refund, and they were trying to help me find work, so I thought that they somehow knew that I

---

[2] The record does not include any direct proof that the conference took place.  However, SSA did make its decision on that day, and the hearing transcript reflects that plaintiff did review the relevant calculations with a representative at some point.  (*Id.* at 39, 191.)

was working when I started working. . . . I think Social Security knows everything . . . ." (*Id.* at 137.) He then testified that SSA contacted him to inquire about his employment status about three months after he started working. (*Id.* at 137.) Thereafter, the following exchange took place:

> Q      But did you ever notify the [SSA] that you went back to work?
>
> A      More or less, I did six months after I started working.
>
> Q      How did you notify them?
>
> A      They had contacted me, and I called them up, and we agreed –
>
> Q      Well, why did you continue to take the money if you knew you were working?
>
> A      Take the money? I didn't have enough money to get by on. I was just evicted. I lost everything. I didn't even have any clothes to go to work with.

(*Id.* at 141.) He also testified that he did not know who he spoke to during the call, but that he did receive publications regarding SSI benefits, including "How Your Earnings Affect Your SSI Payments." (*Id.* at 147.)

In a decision dated March 28, 2007 ("the first ALJ decision"), ALJ Nisnewitz found that the overpayment could not be waived because plaintiff was not without fault in accepting it. (*Id.* at 101–08.) In a decision dated May 6, 2009 ("the first Appeals Council decision"), the Appeals Council vacated the first ALJ decision, remanded the case, and instructed the ALJ to determine whether plaintiff's paranoid schizophrenia impacted his ability to understand and comply with the SSA reporting requirements. (*Id.* at 122–25.)

On September 21, 2009, ALJ Nisnewitz held a second hearing at which plaintiff appeared and was represented by Victoria C. Salzano. (*Id.* at 161.) Plaintiff testified that he worked some in February of 1999 and then began working again in October 1999. (*Id.* at 167, 172–74.) He also testified that he earned between $19,000 and $33,910 per year from 2001 to 2006. (*Id.* at

168–70, 174.) He described his employment duties with Retail Data Services (RDS), for whom he began working in late 1999, which offers a price-checking service to retail businesses that facilitates price competition. RDS employees are provided with a list of items; they are expected to search for those items in competing stores and check their prices. (*Id.* at 169–70.)

Plaintiff testified that he had not been hospitalized for paranoid schizophrenia or any other condition since 1995. (*Id.* at 171.) He admitted that he had an alcohol problem in 1994 and 1995 and "throughout most of [his] life, really." (*Id.* at 172.) Despite that he was treated by a psychiatrist on an outpatient basis during this period, he testified that his mental status did not prevent him from working. (*Id.* at 174.) He also testified that he was taking medication, but that it was discontinued sometime around the end of 1998. (*Id.* at 175.) Plaintiff acknowledged that when he filed his application to receive SSI benefits he signed a statement that he would inform the agency if he went back to work. (*Id.* at 188–89.)[3]

In a decision dated September 29, 2009 ("the second ALJ decision"), ALJ Nisnewitz again found that plaintiff was not without fault in accepting the overpayment and that it therefore could not be waived. (*Id.* at 9–16.) The ALJ considered plaintiff's disability in making this decision and concluded that his continued employment and ability to manage his own finances indicated his ability to understand and comply with the reporting requirements. (*Id.* at 15.) The decision directed that recovery be effectuated at a rate of $20 per month. (*Id.*) On May 26, 2011, the Appeals Council declined to review the decision, at which time the second ALJ decision became final. (*Id*. at 2.)

In this action, plaintiff seeks review of the determination that he was not without fault in accepting the overpayment. (Compl. (Doc. No. 1).) On January 9, 2012, defendant served

---

[3] The ALJ also engaged in a discussion with plaintiff's representative on the record wherein the representative informed the ALJ that she advised plaintiff to concede fault. (*Id.* at 185–93.) The statements of the ALJ and the representative during this exchange do not constitute evidence, and this Court will not consider them as such.

plaintiff with its motion for judgment on the pleadings. (Def.'s Lt. to *Pro Se* Pl., dated Jan. 9, 2012 (Doc. No. 12).) Several months later, defendant informed the Court that plaintiff had failed to serve an opposition to the motion. (Def.'s Lt. dated Apr. 18, 2012 (Doc. No. 14).) Plaintiff then filed a response, explaining the reasons for his failure to serve an opposition and providing arguments in response to defendant's motion. (Pl.'s Lt. dated May 14, 2012 (Doc. No. 15).) In an order dated June 21, 2012, the Court accepted plaintiff's letter response as his opposition to defendant's motion. On June 29, 2012, defendant filed its motion for judgment on the pleadings and related documents. (Mot. for J. on the Pleadings (Doc. No. 16).) For the reasons set forth below, defendant's motion is GRANTED.

## LEGAL STANDARD

### I.  Social Security Income Benefits and Overpayment

In order to qualify for SSI benefits, a disabled individual must meet, *inter alia*, the resource and income limits established by the Social Security Act. *See* 42 U.S.C. §§ 1381a, 1382(a); 20 C.F.R. § 416.202. The amount of monthly SSI benefits that an individual receives is based in part upon the amount of the individual's income. *See* 42 U.S.C. §§ 1382(a)(1)(A), 1382a. An overpayment is a payment of an amount more than the amount due for a given period. 20 C.F.R. § 416.537(a). SSI recipients are obligated to report any change in income or resources to SSA. 20 C.F.R. § 416.708; *Howard v. Sec'y of Dep't of Health and Human Servs.*, 741 F.2d 4, 8 (2d Cir. 1984). If an individual receiving SSI benefits is incorrectly paid more than the amount he is entitled to, the Commissioner is authorized to seek a repayment of the excess amount of benefits. *See* 42 U.S.C. § 1383(b)(1)(A); 20 C.F.R. §§ 416.537, 416.550–90; *Howard*, 741 F.2d at 8.

When there has been an overpayment, the requirement to repay it can be waived only in limited circumstances. The Commissioner will grant a waiver only if an individual is 1) "without fault" and 2) repaying the overpayment would a) defeat the purpose of the Act; b) be against equity and good conscience; or c) impede the efficient or effective administration of the SSI program. 42 U.S.C. § 1383(b)(1)(B); 20 C.F.R. § 416.550. If there is fault, the second prong of the test need not be considered; fault is enough to deny a request for a waiver of overpayment. *Chlieb v. Heckler*, 777 F.2d 842, 846 (2d Cir. 1985) ("[W]e need not consider whether recovery of the overpayments would defeat the purpose of Title II or would be against equity and good conscience, since those factors come into play only if the recipient is without fault.").[4]

When considering whether there is fault, the Commissioner must consider all pertinent circumstances, including:

> the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental condition).

20 C.F.R. § 416.552. The Commissioner will determine that an individual is at fault if that individual 1) failed to furnish information he knew or should have known to be material; 2) made an incorrect statement he knew or should have known to be incorrect; or 3) did not return a payment he knew or could have been expected to know was incorrect. *Id.*; *Howard*, 741 F.2d at 7–8. "No showing of bad faith is required; rather, an honest mistake may be sufficient to

---

[4] As explained in *Howard*, "the basic principles in overpayment cases are the same regardless of the type of benefit allegedly overpaid, and authorities interpreting the regulations relating to insurance benefits are pertinent to SSI cases as well." 741 F.2d at 7 n.1. Cases relating to such other types of benefits are therefore cited herein without further distinction.

constitute fault. [Furthermore,] [t]he fact that the SSA may have been at fault in making the overpayment does not relieve the recipient from liability for repayment if the recipient also was at fault." *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983).

## II.    Standard of Review

"The Secretary's conclusion that a claimant was not without fault is a factual determination that must be upheld if it is supported by substantial evidence in the record as a whole." *Howard*, 741 F.2d at 8. "'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]here substantial evidence supports the Commissioner's conclusions, this Court may not substitute its own judgment as to the facts, even if a different result could have been justifiably reached upon *de novo* review. Only the Commissioner's legal conclusions may be reviewed *de novo* without deference." *Beres v. Chater*, Civ. No. 93-CV-5279, 1996 WL 1088924, at *5 (E.D.N.Y. May 22, 1996) (citing *Brown v. Bowen*, 905 F.2d 632, 638 (2d Cir. 1990); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).

## DISCUSSION

In his second decision, ALJ Nisnewitz correctly identified the relevant legal and factual issues, and applied the appropriate legal standards. The relevant issues included whether the claimant received an overpayment, and, if so, whether he was at fault in accepting it, meaning he knew or should have known the payments were incorrect or failed to furnish material information. (Admin. R. at 13.) ALJ Nisnewitz also properly noted that the remainder of the waiver analysis—consideration of whether recovery would defeat the purposes of the Social Security Act or be against equity and good conscience—was necessary only "if the claimant is

found to be without fault."[5]  (*Id.*)  Furthermore, as explained below, his findings as to the

relevant issues are supported by substantial evidence in the record.

## I.  Plaintiff Was Overpaid

In his second decision, ALJ Nisnewitz found that plaintiff was overpaid in the amount of

$4,666.42 and noted that plaintiff never contended that such amount was incorrect or not

received.  (Admin. R. at 14.)  There was substantial evidence in the record for this finding, in the

form of multiple SSA database queries showing the amount in checks sent to plaintiff, his

income for those periods, and an overpayment balance of $4,666.42.  (Admin. R. 47–57.)[6]

Plaintiff makes a number of arguments in his petition and opposition papers relating to

the overpayment amount.  First, he states that, after he requested review of the second ALJ

decision from the Appeals Council, he received a letter from his credit monitoring agency "with

a zero(0) [sic] balance for Social Security Administration."  (Compl. ¶ 3; *id.* at 2 (attaching the

referenced document).)  The Court will not consider this new evidence in reviewing the

Commissioner's final decision as it is not properly part of the administrative record.  *See Jones*

*ex rel. T.J. v. Astrue*, Civ. No. 07-CV-4886 (SLT), 2010 WL 1049283, at *10 (E.D.N.Y. Mar.

17, 2010).  Nor does this evidence warrant a remand since it is not "new evidence which is

material and [] there is [not] good cause for the failure to incorporate such evidence into the

record."  *See Lisa v. Sec'y Dep't of HHS*, 940 F.2d 40, 43 (2d Cir. 1991).  Moreover, the

---

[5] ALJ Nisnewitz went on to make findings as to the second prong of the waiver test, despite having found that plaintiff was not without fault.

[6] In particular, a query dated November 4, 2003 reflects computations of periods of overpayment (labeled "TOP") including February of 1999 ("0299"), November and December of 1999 ("1199"), and January through October of 2000 ("0100", "0200", "0600", "0900").  (Admin. R. at 56.)  Spikes in "PCI," plaintiff's income that is countable against his SSI benefits, can be seen in each month included in those periods.  The respective overpayments for those periods appear to be: $356.34 in February 1999, $333.34 in November and December of 1999, and $364.34 in January through October of 2000, totaling $4,666.42 ($356.34 + ($333.34 * 2) + ($364.34 * 10) = $4,666.42).  (*Id.*) It is not clear from the query why the state amount ("SMA") of $23.00 in November and December of 1999 was not counted in the overpayment amount.  However, plaintiff does not challenge this aspect of the calculation, and, if it was an error, it was in his favor.

notification, dated December 7, 2009, allegedly reflecting a zero balance with SSA bears no relevance to the appropriate calculation of plaintiff's overpayment in 1999 and 2000.

Plaintiff theorizes that the zero balance on his credit report reflects a change in SSA's position on an entirely separate alleged underpayment that plaintiff believes he is due. (Pl.'s Mem. at 1–2, 20.) Several times during these proceedings, plaintiff has recounted his efforts to obtain a refund from SSA based on his belief that he was being underpaid. At the hearing in this case, plaintiff testified that he learned in 1997 that other SSI recipients were receiving higher benefits than he, and he went to a local SSA office to request more benefits. (Admin. R. at 133, 182.) He testified that he was owed approximately $9,000,[7] and that the SSA employee he spoke with in 1997 promised him a $5,000 to $10,000 refund and help finding a job. (*Id.* at 182.) The role of this Court is to review the decision of the ALJ with respect to the alleged overpayment in 1999 and 2000. Any alleged underpayment prior to 1998 is not on the administrative record, and is therefore not before this Court.

Plaintiff also refers this Court to the documents accompanying his request to the Appeals Council. This Court may consider these materials, despite that they were not presented to the ALJ, since "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). Within these documents, plaintiff states: "The records that I have enclosed to prove the correct amount that is really owed is 1) A trial work period sheet where "the allowable figure for 1999 for me was $700-/mth and I made $255-/mth average for 1999." (Compl. at 4.) This statement confuses

---

[7] Plaintiff testified that for three years he was getting $250, while he heard others were getting $500. (Admin. R. at 182.) This is presumably the source of his alleged $9,000 underpayment (($500-$250) * 36 months = $9,000). In his memorandum in support of this appeal, he suggests that the underpayment may be related to a change in his living arrangements. (Pl.'s Mem. at 18.) No evidence has been submitted at any stage of these proceedings as to these issues, and the ALJ had no duty to develop the record as to the underpayment issue, as it was not before him.

several aspects of the relevant overpayment calculation. First, income eligibility for SSI benefits is calculated on a month by month basis, not averaged by month over the year; plaintiff is responsible for overpayments in months in which he was paid more than was due, depending on his income in the relevant month, not the average for the year. *See* 20 C.F.R. § 416.1100 ("We count income on a monthly basis."). Second, plaintiff's source for the $700 figure is the monthly "substantial gainful activity" amount. Reliance on this figure is misplaced. The substantial gainful activity amount relates to determining the "disabled" status that is required for benefits; a claimant is presumably not disabled, and not entitled to SSI benefits, if he makes more than the substantial gainful activity amount. 20 C.F.R. §§ 416.971, 416.974. Here, however, plaintiff has not been determined to be ineligible for benefits based on not being "disabled," but instead based on his income—a separate eligibility consideration. Plaintiff's relevant earnings are measured against the maximum SSI benefit, which is separately set. *See* Office of the Commissioner; 1999 Cost-of-Living Increase and Other Determinations, 63 Fed. Reg. 58446-01 (Oct. 30, 1998) (setting SSI benefits at $500 for 1999); Office of the Commissioner; Cost-of-Living Increase and Other Determinations for the Year 2000, 64 Fed. Reg. 57506-04 (Oct. 25, 1999) (setting SSI benefits at $512 for 2000).[8]

In his complaint, plaintiff also alleges that he is being charged "an extra $3,000.00," presumably separate from the alleged $9,000 underpayment discussed above. (Compl. ¶ 3.) In his memorandum in support of his appeal, plaintiff formulates the amount a little differently, saying "THE OVERPAYMENT AMOUNT was off By at least $3,300.00." (Pl.'s Mem. at 1,

---

[8] To the extent that plaintiff is arguing that he is entitled to a trial work period, this argument also fails. The "trial work period" outlined in 20 C.F.R. § 404.1592, during which time a benefit recipient is entitled to test her ability to work without threatening her "disabled" status, does not apply to Supplemental Security Income benefits. *See Newton v. Charter*, 92 F.3d 688, 693 n.1 (8th Cir. 1996); *Walker v. Sec'y of Health & Human Servs.*, 943 F.2d 1257, 1258 (10th Cir. 1991); *Lichtenstein v. Barnhart*, Civ. No. 05-CV-111, 2006 WL 1554630, at *4 (D. Me. June 1, 2006); *Hovenga v. Apfel*, Civ. No. C98-3076-MWB, 1999 WL 33657690, at *14 n.4 (N.D. Iowa Dec. 17, 1999).

10.)  Plaintiff provides no calculations or explanations of the alleged $3,000 overcharge, let alone supporting evidence.  The only calculation provided by plaintiff involved multiplying $240 (labeled "monthly SSA") by twelve (labeled "12 mths in 1999"), resulting in $2,880 (labeled "adjusted amount not owed for 1999").  (Compl. at 4 ($240 * 12 = $2,880)).  He then subtracted the "adjustment" of $2,880 from $4,660, which he labeled "current amount owed," leaving $1780, labeled "amount to be paid back."  (*Id.* ($4,660 - $2,880 = $1,780).)  No other explanation is provided.  It is unclear if this $2,880 is the same as plaintiff's alleged $3,300 overcharge.  In any event, plaintiff's calculations appear to reflect a misunderstanding that any SSA benefits he received should be directly subtracted from the amount that is owed due to overpayment.  The Court sees no reason why this would be true.  Any benefits received by plaintiff were presumably included in the relevant calculation of his benefits due, which, in the plaintiff's case, were zero.  Such benefits would have been included in his unearned income, which is rightly included in his countable income, which is deducted from the SSI benefit amount to determine his benefits due.  *See* 20 C.F.R. § 416.1100 ("[T]he more income you have the less your benefit will be."); 20 C.F.R. § 416.1104 ("There are different types of income, earned and unearned, and we have rules for counting each."); 20 C.F.R. § 416.1121(a) ("This unearned income . . . . includes, for example . . . social security benefits . . . .").  Plaintiff presents nothing to the contrary.  Any alleged error or adjustment amount is therefore entirely unsupported by the record.

Plaintiff notes in his memorandum the "very unsecure job market" and prevalence of foreclosures at the time of his filing, and explains that he presented "these facts" to his local SSA office, and "SSA Issued a waiver for the debt that Mrs. Miller with the Jamaica branch Overrided 8 months after it was issued and sent me a monthly bill for $165.00."  (Pl.'s Mem. at 17, 20.)

The Court reads this statement to allege that, after the events on the record below, plaintiff went to SSA, and the agency issued a waiver, which was later revoked.  Evidence related to this alleged visit is not a valid or relevant part of the administrative record.  Moreover, to the extent that the occurrence of this alleged "waiver" is predicated on plaintiff's earlier espoused belief that his credit report reflects a change of heart on the part of SSA, (Pl.'s Mem. at 1–2), it is pure speculation and entirely irrelevant to the issues at hand.  There is substantial evidence in the record for the finding that plaintiff was overpaid during 1999 and 2000 in the amount of $4666.42, and no relevant evidence has been presented to this Court to the contrary.

## II.     Plaintiff Was Not Without Fault

In his second decision, ALJ Nisnewitz found that plaintiff was not without fault in accepting the overpayment.  (Admin. R. 14–15.)  Plaintiff was at fault if he 1) failed to furnish information he knew or should have known to be material; 2) made an incorrect statement he knew or should have known to be incorrect; or 3) did not return a payment he knew or could have been expected to know was incorrect.  *Id.*; *Howard*, 741 F.2d at 7–8.  The ALJ found that plaintiff failed on two counts, failing to furnish information and failing to return a payment known to be incorrect.  He found that plaintiff starting working in 1999, but failed to inform SSA of the change, despite knowing that such information was material.  (*Id.* at 14.)  He also considered plaintiff's testimony that he spoke on the telephone with someone and told them he was working, but failed to remember who he spoke with or when.  (*Id.* at 15.)  And he considered plaintiff's "Request for Waiver or Overpayment Recovery," wherein he stated his belief that he should only have to pay back a portion because it was SSA who made a "clerical error."  (*Id.*)  Based on this evidence, ALJ Nisnewitz found that plaintiff was aware that he was not entitled to continue receiving benefits, and that he did not return the payments despite that he

knew or could have been expected to know they were incorrect. (*Id.*) The ALJ also considered, as required by the remand order of the Appeals Council, whether plaintiff's paranoid schizophrenia affected his capability to meet his reporting requirements. ALJ Nisnewitz considered that in 1999 and 2000, plaintiff was able to work for periods of full-time work and handle his personal finances "effectively and without assistance." (*Id.*) The ALJ therefore found that plaintiff could understand and comply with his reporting requirements, and that he was at fault in causing the overpayment. (*Id.*)

There was substantial evidence for these findings. In his waiver request, plaintiff indicated that he notified SSA about the change that made him overpaid, yet provided no explanation of how or when he actually notified them, never explicitly claiming to have told anyone that he was working. (Admin. R. at 30.) Instead, he wrote that he spoke to someone and requested a waiver, and he explained how he was using the money. (*Id.*) The Court finds it telling that plaintiff did not explicitly claim to have met his obligations at that time. When asked at a hearing whether he notified SSA, plaintiff explained that SSA "should have known" because he previously told them he was looking for work, and he believed that "SSA knows everything." However, the question is not whether SSA knew he had begun working, but whether plaintiff complied with his reporting obligations. Plaintiff cannot meet his affirmative obligation by implication. *See Howard*, 741 F.2d 4, 7–8 (finding claimant was not without fault despite that she claimed to have sent letters that might inform SSA of her change in resources because the letters were not sent for that purpose, and she could not meet her burden by "notification at random or by implication" (quoting the ALJ)). It was not until much later in his testimony that plaintiff claimed to have "more or less" told someone in SSA that he was working. He offers no details, let alone proof, of the conversation. The ALJ did not find this credible, and neither does

this Court.  Plaintiff testified that he did indeed sign a statement at the time of his application for benefits that he would inform the agency if he went back to work.  (Admin. R. at 188–89.)  This reflects an awareness of his reporting obligation, and a failure to meet that obligation renders him not without fault.  *See, e.g.*, *Langella v. Bush*, 161 Fed. App'x 140, 142 (2d Cir. 2005) (affirming finding of fault as supported by substantial evidence where appellant had signed a statement indicating that his reporting responsibility had been explained to him).

Plaintiff's testimony about his signed statement also reflects his understanding of the relevance that his working status had on his entitlement to benefits, and therefore the error evident in the continuation of payments—an independent basis for a finding that he was without fault.  The testimony that immediately followed is even more telling.  When plaintiff claimed to have told an SSA employee that he had begun working, thereby revealing his understanding that his income was material to his entitlement, the ALJ asked, "Well, why did you continue to take the money if you knew you were working?"  Plaintiff replied, "Take the money?  I didn't have enough money to get by on.  I was just evicted.  I lost everything.  I didn't even have any clothes to go to work with."  (*Id*. at 141.)  Even if plaintiff notified SSA of his new work, this testimony is substantial evidence for the ALJ's finding that plaintiff failed to return payments he knew were incorrect.  *See Howard*, 741 F.2d at 8 (affirming finding that claimant was not without fault as supported by substantial evidence where testimony demonstrated an awareness that claimant was no longer entitled to benefits due to change in income).  Plaintiff even claimed to have told SSA to stop payments.  (Admin. R. at 30); *see Center*, 704 F.2d at 680 (affirming finding that claimant was not without fault as supported by substantial evidence where record reflected that claimant requested that SSI benefits be terminated).  Plaintiff's repeated argument that it was SSA's clerical error that was the cause of the overpayment demonstrates further that he

understood that the payments were erroneous. An error on the part of SSA does not relieve plaintiff of his duties, and he is still not without fault in accepting the payments. *Center*, 704 F.2d at 680.

During the second hearing in this case, ALJ Nisnewitz questioned plaintiff about his mental status and treatment during the period of overpayment, with the aim of complying with the remand order of the Appeals Council. (Admin R. at 124.) In his decision, the ALJ recounted that claimant was diagnosed in 1995 with paranoid schizophrenia, but found that the evidence demonstrates that he was nevertheless capable of abiding by his reporting requirements. (*Id.* at 15.) For this finding, the ALJ relied on evidence that plaintiff returned to full-time work in 1999 and continued to work in 2000, during the period of overpayment. The ALJ reasoned that if plaintiff "could perform full time work activity and handle his personal finances effectively and without assistance, it is clear that he could also understand and comply with his obligation to inform the [SSA] in a timely fashion of his return to work." (*Id.*)

There is substantial evidence for this finding. Plaintiff testified that he has not been hospitalized for his condition since 1995, that he discontinued medication around the end of 1998, and that his mental status never prevented him from working. (*Id.* at 174.) He also testified that he took the initiative to visit a SSA office in 1997, seeking to increase his benefits. (*Id.* at 182.) Since that time, plaintiff has continued to actively engage with SSA in relation to his benefits, requesting a waiver, making multiple visits to offices, participating in a personal conference with an SSI representative to review his file and explain his case, requesting reconsideration, filing letters and appeals, and mostly doing so without representation. (*Id.* at 30, 37, 43, 110, 119, 133, 182.) He also marshaled SSA publications in support of his position, going back almost to the time of the overpayment, (*id.* at 73–75), some of which he testified to

having received prior to the overpayment, (*id.* at 147). Plaintiff's active effort to secure more benefits before the overpayment, his efforts to resist recovery of the overpayment, and his attempt to make arguments based on published policies of the SSA, demonstrate an ability to understand his obligations and the impact that his work status had on the appropriateness of his receipt of benefits. The fact that plaintiff appears to be easily confused, a characteristic displayed at the hearing and considered by the ALJ, does not persuade the Court to reach an alternative conclusion. *See, e.g.*, *Howard*, 741 F.2d at 8 (declining to find claimant not at fault despite being "elderly, illiterate, and easily confused").

As there is substantial evidence for the finding that plaintiff was not without fault, this Court will not address the other prongs of the waiver analysis. Plaintiff is not entitled to a waiver, and SSA is entitled to recover the overpayment.

## CONCLUSION

For the reasons herein, defendant's motion for judgment on the pleadings is GRANTED. The Clerk of Court is respectfully directed to enter judgment accordingly, send a copy of the judgment and this order to plaintiff, and close this case.

SO ORDERED.

Dated: Brooklyn, New York
      August 24, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge